# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **LARRY NEAL SULLIVAN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **OFFICE OF THE TEXAS** | § | **EP-18-CV-303-PRM** |
| **ATTORNEY GENERAL** | § | |
| **and ARIZONA** | § | |
| **DEPARTMENT OF** | § | |
| **ECONOMIC SECURITY,** | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS</u>

On this day, the Court considered the following submissions in the above-captioned cause:

- Defendant Arizona Department of Economic Security's [hereinafter "Arizona DES"] "Motion to Dismiss First Amended Complaint" (ECF No. 20) [hereinafter "Arizona DES Motion"], filed on December 19, 2018;

- Plaintiff Larry Neal Sullivan's [hereinafter "Plaintiff"] "Answer to ADES Motion to Dismiss First Amended Complaint" (ECF No. 23) [hereinafter "Response to Arizona DES"], filed on January 7, 2019;

- Arizona DES's "Reply in Support of its Motion to Dismiss" (ECF No. 24) [hereinafter "Arizona DES Reply"], filed on January 14, 2019;

- Plaintiff Larry Neal Sullivan's [hereinafter "Plaintiff"] "Supplemental Answer to ADES Motion to Dismiss" (ECF No. 28) [hereinafter "Surreply to Arizona DES"], filed on January 31, 2019;[1]

- Defendant Office of the Attorney General of Texas's [hereinafter "Texas OAG"] "Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (ECF No. 25) [hereinafter "Texas OAG Motion"], filed on January 18, 2019;

- Plaintiff's "Answer to Texas OAG Motion to Dismiss First Amended Complaint" (ECF No. 29) [hereinafter "Response to Texas OAG"], filed on February 6, 2019;

- Texas OAG's "Reply in Support of Motion to Dismiss" (ECF No. 30) [hereinafter "Texas OAG Reply"], filed on February 12, 2019; and

- Plaintiff's "Sur-reply to OAG Reply in Support of Motion" (ECF No. 42) [hereinafter "Surreply to Texas OAG"], filed on March 20, 2019.

After due consideration, the Court is of the opinion that Arizona DES's and Texas OAG's Motions should be granted and the above-captioned cause should be dismissed, for the reasons that follow.

---

[1] Typically, parties must seek leave in order to file a surreply. *See* Local Rule CV-7(f)(1). Plaintiff correctly sought leave before filing his surreply to the Texas OAG Motion but failed to do so regarding the Arizona DES Motion. The Court notes that all litigants—including those who proceed pro se—must abide by the Federal Rules of Civil Procedure as well as the Local Rules. Nonetheless, the Court considered Plaintiff's surreply in drafting this Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute challenging state actions related to child support payments. Plaintiff and his former spouse married in 2009. *Sullivan v. Lepage-Sullivan*, No. 07-15-00081-CV, 2017 WL 393981, at *1 (Tex. App. Jan. 25, 2017).[2] They have one marital child, who was adopted during the marriage. *Id.* "In the Fall of 2012, the marital relationship deteriorated," and in February 2013, Plaintiff's wife moved from Texas to Arizona. *Id.* at *2. Both spouses filed for divorce in Lubbock, Texas, in February 2013. *Id.* A final divorce hearing was held in September 2013, and "[m]ore than fourteen months after the final hearing was held," a final divorce decree was entered in December 2014. *Id.* According to Plaintiff, at the time of the divorce hearing, Plaintiff held regular employment; however, Plaintiff's regular employment ended in June 2014. Am. Compl. 7. Plaintiff alleges that the final divorce decree and child support order "completely disregard[ed] the downturn in [his] financial circumstances." *Id.*

Thereafter, the Texas trial court refused to hear a request to

_____

[2] For background information regarding the circumstances giving rise to Plaintiff's claims, the Court relies on an opinion issued by a Texas Court of Appeals during prior litigation concerning Plaintiff's child support responsibilities.

modify Plaintiff's child support on jurisdictional grounds. *Id.* at 15.

Because the child had moved to Arizona with Plaintiff's former spouse

for a sufficient amount of time, the Texas court determined that

Arizona had become the child's "home state" and that any modifications

must occur in Arizona. *Id.* Then, in March 2015, Plaintiff filed a

petition to modify the child support order in Pinal County, Arizona. *Id.*

Plaintiff alleges that the Arizona court dismissed the motion ex parte

and that Plaintiff did not receive notice or a hearing. *Id.* at 16–17.

According to Plaintiff, "[i]n May 2015 Arizona DES used

administrative process without a pre-enforcement adversarial hearing

to garnish the Petitioner's SSA monthly old age benefit without prior

notice or opportunity to be heard." *Id.* at 23. At some point, Plaintiff

declared bankruptcy; however, because "child support arrears are not

dischargeable in bankruptcy," Plaintiff remains responsible for

thousands of dollars in unpaid child support obligations. *Id.* at 24.

Additionally, Petitioner alleges that "BOTH [Texas's and Arizona's]

state-sponsored collection agencies are claiming the right to enforce"

Plaintiff's outstanding child support obligations. *Id.* at 25.

Plaintiff appealed his divorce decree to a Texas Court of Appeals,

and his appeal was decided in January 2017. *Sullivan*, 2017 WL 393981, at *1. In his appeal, Plaintiff raised several alleged "points of error" challenging the trial court's factual determinations. *Id.* at *4–8. Additionally, Plaintiff raised "fundamental errors," including alleged constitutional violations. *Id.* at *8–11. Specifically, Plaintiff "claim[ed] denial of substantive and procedural due process as well as violation of equal protection rights." Am. Compl. 8.

According to the Texas Court of Appeals, Plaintiff alleged that the Texas Family Code § 143.133 was unconstitutional as applied to him and offended notions of substantive due process. *Sullivan*, 2017 WL 393981, at *9. Additionally, Plaintiff asserted that the statutory presumptions in the Texas Family Code § 154.122 were unjust and inappropriate. *Id.* Further, Plaintiff asserted that the trial court abused its discretion because of its delay in entering the final divorce decree. *Id.* at *11. The Texas Court of Appeals overruled each of Plaintiff's constitutional claims. *Id.* at *9–11. Plaintiff expresses frustration with the Texas Court of Appeals' decision. In particular, Plaintiff asserts that the Court of Appeals "completely ignored [his] equal protection claims." Am. Compl. 10. He also criticizes the Court of

Appeals' reasoning regarding his due process claims and characterizes its analysis as "conclusory-begs-the-question remarks." *Id.* at 11.

Plaintiff, an attorney who represents himself in this action, filed his initial "Complaint for Violations of Constitutional Rights" (ECF No. 7) on October 24, 2018, and his "First Amended Complaint for Violations of Constitutional Rights" (ECF No. 11) [hereinafter "Amended Complaint"] on November 6, 2018. Now, in federal court, Plaintiff again challenges his child support proceedings as well as state statutes underlying the child support systems. According to Plaintiff, "[t]his dispute is about whether and how federal equal protection and due process clauses of the U.S. Constitution protect a child support obligor in an interstate setting." Am. Compl. 1.

Specifically, Plaintiff challenges the right of Texas OAG "to seize an IRA and any of 'all other [unspecified] accounts' to satisfy alleged child support arrears, or to garnish wages or SSA benefits." *Id.* at 2. Additionally, Plaintiff challenges the Arizona DES's rights to enforce the child support order at issue. *Id.* Plaintiff argues that "errors of accounting" underlie his child support calculations and "cannot be resolved by litigating separately with either Texas OAG or Arizona

DES." *Id.* at 3.  Plaintiff also requests that the Court assert supplemental jurisdiction over his motion to modify child support, which is pending in Arizona state court.  *Id.* at 4.

Arizona DES and Texas OAG filed motions to dismiss.  Arizona DES asserts that the Court lacks subject-matter jurisdiction because the suit is barred by the Eleventh Amendment, the *Rooker-Feldman* doctrine, and the *Younger* abstention doctrine.  Arizona DES Mot. 4–9. Additionally, Arizona DES avers that the Court lacks personal jurisdiction over it because (1) the Texas long-arm statute does not reach Arizona DES, (2) asserting jurisdiction over the agency would violate due process, and (3) Arizona is a non-jural entity incapable of being sued.  *Id.* at 9–16.  Finally, Arizona DES avers that Plaintiff fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  *Id.* at 16–19.

In its Motion, Texas OAG avers that the claims against it are barred by Eleventh Amendment immunity and the *Rooker-Feldman* doctrine.  Texas OAG Mot. 4–7.  Moreover, Texas OAG contends that Plaintiff's claims are barred by the domestic relations exception to diversity jurisdiction.  *Id.* at 7.  Finally, Texas OAG alleges that, "[t]o

the extent that [Plaintiff] alleges claims other than those based on constitutional challenges under 42 U.S.C. § 1983, the legal bases for these claims are unclear and they must therefore be dismissed for failure to state claims for which relief may be granted." *Id.* at 8.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1):  Lack of Subject-Matter Jurisdiction

If a court lacks subject-matter jurisdiction over a claim for relief, then it must dismiss the claim.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and therefore have power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Once a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court possesses subject-matter jurisdiction over the dispute.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.

2001) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

## B.  Rule 12(b)(2):  Lack of Personal Jurisdiction

The Texas long-arm statute "has been interpreted to extend to the limits of due process." *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985) (citations omitted).  "For due process to be satisfied, (1) the non-resident defendant must have 'minimum contacts' with the forum state resulting from an affirmative act on the defendant's part, and (2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Wien Air Alaska, Inc. v. Norddeutsche*, 62 F.3d 396 (5th Cir. 1995) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When conducting a minimum-contacts analysis, courts "must look to see whether there has been some act by which the nonresident 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the

forum state.'" *Stuart*, 772 F.2d at 1190 (citing *Growden v. Ed Bowlin & Associates, Inc.*, 733 F.2d 1149, 1151 (5th Cir. 1984)) (alteration in original).

A defendant's minimum contacts with a state may give rise to either general or specific jurisdiction. "General jurisdiction, on one hand, requires that the defendant have continuous and systematic contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citations and internal quotation marks omitted). On the other hand, "[f]or specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state, and the cause of action must arise from or be connected with such act or transaction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### C.  Rule 12(b)(6):  Failure to State a Claim upon which Relief can be Granted

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." In determining whether a plaintiff states a valid claim, a

court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)). In considering a motion pursuant to Rule 12(b)(6), a district court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III. ANALYSIS

### A. The Eleventh Amendment and State Immunity

#### 1. Plaintiff's claims against state agencies are barred by the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment prohibition regarding suits against States extends to suits against state agencies

11

and instrumentalities that function as "an arm of the state."[3] *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001). If a State is properly immune from suit pursuant to the Eleventh Amendment, then federal courts lack subject matter jurisdiction over the case. *See Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (stating that "[e]xcept when waived . . . immunity deprives federal courts of subject matter jurisdiction"). Therefore, if a defendant is shielded by sovereign immunity, then the court must dismiss the case.

Plaintiff avers that Arizona has waived its immunity from suit and, accordingly, that his claims against Arizona DES are proper. Surreply to Arizona DES 2–3. The case that Plaintiff principally relies on—*Stone v. Arizona Highway Commission*—overruled "governmental immunity from tort liability" and held that the State of Arizona could be held liable for its employee's torts. 93 Ariz. 384, 387 (1963). This rule was later codified as Ariz. Rev. Stat §§ 12–820, et. seq. *See Backus v.*

---

[3] To the extent that Plaintiff attempts to assert a claim against any state entity based on judicial acts or Plaintiff's dissatisfaction with the decisions of judges presiding over family law matters, the State is immune from suit. Federal common law provides absolute immunity for acts taken by persons who are exercising judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction.").

*State*, 220 Ariz. 101, 104 (2009) (stating that the statute codified the holding in *Stone*).

Even if Arizona's waiver of sovereign immunity would properly apply to Plaintiff's claims if they were filed in state court,[4] Plaintiff has failed to establish that Arizona intended to waive immunity as to suits filed in *federal* court. In considering Arizona's waiver of sovereign immunity, the Ninth Circuit determined that Arizona has not consented to suit in federal court. *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981) ("[C]onsent to be sued in state court does not necessarily imply consent to be sued in federal court.") (citing *Kennecott Copper Corp. v. Tax Comm'n*, 327 U.S. 573, 577–80 (1946)). Similarly, the Fifth Circuit has stated that "[s]overeign immunity antedates eleventh amendment immunity and is a separate and distinct concept. A finding respecting either the waiver or the applicability of one does not necessarily mandate the same result as to the other." *Karpovs v. State of Miss.*, 663 F.2d 640, 645 (5th Cir. 1981). Accordingly, the Court

---

[4] The statute—which appears to waive immunity for governmental torts—might not apply to Plaintiff's constitutional claims. However, the Court need not consider whether Plaintiff's claims would be within the statute's scope because the Court concludes that a statute exposing a State to suit in state court does not necessarily waive Eleventh Amendment immunity in federal court.

concludes that, even if Arizona has waived immunity from Plaintiff's claims in its own state courts, the Eleventh Amendment prohibits this suit against Arizona in federal court.

Plaintiff also asserts that the Eleventh Amendment should not preclude his suit against Texas OAG. Specifically, Plaintiff contends that "suits for property alleged to be unlawfully or wrongfully withheld from the rightful owner by officers of the state are not suits against the sovereign itself and may be maintained without permission of the sovereign." Resp. to Texas OAG 6 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371 (Tex. 2009)). In *Heinrich*, the Texas Supreme Court explained that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments." 284 S.W.3d at 371.

Here, it appears that Plaintiff believes that his suit is one seeking the payment of an entitlement because the practical effect of Plaintiff's child support obligations is that he does not receive his social security benefits. Resp. to Texas OAG 6. However, this is not a public benefits case. To the contrary, Plaintiff ultimately disagrees with the Texas

District Court's determination regarding the use of his benefits to pay child support obligations. *See id.* Plaintiff may not recast his case regarding child support obligations as one regarding an entitlement to public benefits simply because Plaintiff's child support obligations affect his receipt of public benefits.

In conclusion, the Eleventh Amendment bars Plaintiff's suit against both Arizona DES and Texas OAG.

## 2. Plaintiff's claims must be pleaded against a named officer pursuant to *Ex Parte Young.*

Although the Eleventh Amendment precludes claims against States and state agencies, a plaintiff may sue a named officer of a State to enjoin the enforcement of an unconstitutional law. *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff avers that his suit may be properly maintained without relying on *Ex Parte Young* because governmental entities are "persons" who may be sued pursuant to 42 U.S.C. § 1983. Resp. to Texas OAG 14. To support his contention, Plaintiff relies on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). However, in *Monell*, the United States Supreme Court determined that *local*—i.e., municipal—governmental entities could be held liable as a "person" for purposes of 42 U.S.C. § 1983. 436 U.S. at

700.  On the other hand, *Monell* does not expose state-level agencies to liability.  Specifically, the Supreme Court has determined that "a State is not a 'person' within the meaning of § 1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).  Accordingly, 42 U.S.C. § 1983 does not abrogate immunity nor allow Plaintiff to directly sue a State or state agency.  To the contrary, the Eleventh Amendment prevents any such lawsuit.

At any rate, if Plaintiff wishes to bring claims challenging allegedly unconstitutional actions taken or policies enforced by Arizona DES or Texas OAG, then Plaintiff would be required to file suit against an appropriate named official.  Accordingly, any viable suit challenging the States' actions must be brought pursuant to *Ex Parte Young*.

        3.     <u>Granting Plaintiff leave to amend his complaint pursuant to *Ex Parte Young* would be futile.</u>

Because state agencies are immune from suit but named officers may be sued for their enforcement of allegedly unconstitutional laws, the Court next considers whether to grant Plaintiff leave to amend his pleadings in order to name state officials as the defendants in this case.  "Whether leave to amend should be granted is entrusted to the sound discretion of the district court."  *Young v. U.S. Postal Serv. ex rel.*

*Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015). "The court should freely give leave when justice so requires." *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). In determining whether to grant leave to amend, the relevant considerations are: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004).

In this case, the first four considerations—undue delay, bad faith, repeated failure to cure, and undue prejudice—all support that the Court should provide Plaintiff with leave to amend. First, allowing leave to amend would not lead to undue delay because Plaintiff could amend the named Defendants without affecting the case's progress, adding new substantive claims, or otherwise delaying litigation. Second, there is no reason to believe that Plaintiff acted in bad faith when he named state agencies, rather than state officers, as Defendants. Instead, naming the state agencies as Defendants appears to be a good-faith error based on Plaintiff's belief that the Defendants were proper. Third, Plaintiff has not yet attempted to cure this deficiency, so there is no repeated failure to cure. And fourth,

Defendants do not face undue prejudice. If anything, Arizona DES and Texas OAG are on notice of Plaintiff's claims and likely anticipate that the Court might allow Plaintiff to amend his complaint pursuant to *Ex Parte Young* if an amendment is not futile.

The fifth factor—whether the amendment would be futile—is the most important factor in this case. Defendants Arizona DES and Texas OAG have asserted that Plaintiff's claims must be dismissed on additional, non-immunity-based grounds. If Plaintiff's case would be dismissed even if it was properly brought against a state official—e.g., because the court lacks personal or subject matter jurisdiction over the case—then providing leave to amend is futile. As discussed below, the Court may not assert personal jurisdiction over an out-of-state officer acting in the scope of her official duties. Thus, allowing Plaintiff to amend his complaint against Arizona DES pursuant to *Ex Parte Young* would be futile. Additionally, the Court determines that Plaintiff's claims against Texas OAG are barred by the *Rooker-Feldman* doctrine. Thus, granting Plaintiff leave to amend his complaint against Texas OAG would also be futile.

In sum, the Eleventh Amendment bars Plaintiff from suing state

agencies.  Although constitutional claims may be brought to enjoin state officers from enforcing unconstitutional policies, the Court concludes that Plaintiff should not be granted leave to amend his complaint. Specifically, granting Plaintiff leave to amend would be futile because his claims would be dismissed against both Arizona DES and Texas OAG even if they were brought against state officers.

### B.     Personal Jurisdiction over Arizona Agency or Official

The Fifth Circuit has determined that when a "case involves a challenge to an out-of-state regulator's enforcement of her state's statute, rather than a conventional contract or tort claim," the Texas long-arm statute does not reach the out-of-state official.[5]  *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008).  Ultimately, an out-of-state official is neither an individual nor an entity that may be sued in Texas courts pursuant to the Texas long-arm statute.  A nonresident officer acting in her official capacity is not an individual

---

[5] Plaintiff asserts constitutional claims against Arizona DES.  As previously discussed, constitutional claims regarding the validity of a state law must be initiated against an official who enforces the policy— instead of a state agency—because the Eleventh Amendment precludes plaintiffs from directly suing the State.  Accordingly, since Plaintiff's claims would be required to be pleaded against a state officer in order to be viable, *Stroman Realty* directly applies to the case at hand.

over which the Court may assume jurisdiction, as "the Texas statute offers no obvious rationale for including nonresident individuals sued solely in their official capacity under *Ex Parte Young*." *Id.* at 482–83. Additionally, "the only other class of nonresident defined by the statute includes business entities but not fellow states." *Id.* A regulator is not a business entity and therefore does not fall within the reach of Texas's long-arm statute.

Moreover, the Fifth Circuit concluded that "[w]hether or not the Texas long-arm statute encompasses extraterritorial regulation by a nonresident state official, . . . exercising personal jurisdiction over the [out-of-state regulator] in [Texas courts] would violate due process." *Id.* In sum, since the Texas long-arm statute does not authorize extraterritorial jurisdiction over an out-of-state regulator, and because asserting personal jurisdiction over the regulator would violate due process, the Fifth Circuit made clear that a sister-state's official may not be haled into Texas courts based on her enforcement of an allegedly unconstitutional statute.

Accordingly, even if Plaintiff properly amended his complaint pursuant to *Ex Parte Young*, the Court would be unable to assert

personal jurisdiction over claims against Arizona DES's named officers'

enforcement of allegedly unconstitutional policies.  Because the Court

lacks personal jurisdiction over Arizona officers, the Court concludes

that it cannot adjudicate any of Plaintiff's claims against Arizona DES.

### C.   *Rooker-Feldman* Doctrine

The *Rooker-Feldman* Doctrine precludes "cases brought by state-

court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Exxon Mobil

Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  "The basic

theory is that only the United States Supreme Court has been given

jurisdiction to review a state-court decision."  18B CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 4469.1 (2d ed. 2018).

In *Rooker*, the Supreme Court determined that "no court of the

United States other than [the Supreme Court] could entertain a

proceeding to reverse or modify the judgment" of a decision rendered in

a state court.  *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923).  Similar

to here, the plaintiff in *Rooker* averred that a state appellate court's

21

decision contravened, among other things, the due process and equal protection clauses of the United States Constitution. *Id.* at 415. The Supreme Court affirmed the district court's dismissal and reasoned that "[t]he jurisdiction possessed by the District Courts is strictly original," and to review a decision made by a state court "would be an exercise of appellate jurisdiction." *Id.* at 416.

In *Feldman*, the plaintiff—who sought to challenge the District of Columbia's policy precluding the bar admission of applicants who did not attend an accredited law school as applied to him—raised federal constitutional and antitrust challenges to the District's Committee on Admission's denial of his application for bar admission. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 466–67 (1983). The United States Supreme Court determined that the proceedings in front of the District's Court of Appeals regarding state bar applications were "judicial" in nature and, therefore, could not be reviewed by lower federal courts. *Id.* at 476–78. The Supreme Court emphasized that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in this Court." *Id.* at 483.

In the Fifth Circuit, "[a] state court judgment is attacked for purposes of *Rooker–Feldman* 'when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment,' or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.'" *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (first quoting *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003); and then quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). "Federal courts have consistently applied the *Rooker–Feldman* doctrine as a bar to federal jurisdiction over matters related to the family disputes of divorce and child support." *Evans v. Williamson Cty. Gov't, Tex.*, No. A-15-CV-436-SS, 2015 WL 4621449, at *4 (W.D. Tex. May 28, 2015) (collecting cases), *report and recommendation adopted*, No. A-15-CA-436-SS, 2015 WL 4624708 (W.D. Tex. July 31, 2015).

In this case, Plaintiff argues that the *Rooker-Feldman* doctrine should not apply because he challenges the constitutionality of a state statute that underlies the state court decisions. Resp. to Texas OAG 9. Although it is true that a constitutional challenge to an injury imposed by state statutes may often be raised in federal court, a plaintiff loses

his ability to do so once he raises the challenge in state court. In his Amended Complaint, Plaintiff admits that he raised equal protection and due process challenges to his divorce decree in front of the Texas Court of Appeals, and Plaintiff discusses the Court of Appeals' (in Plaintiff's view, unsatisfactory) treatment of his constitutional claims. Am. Compl. 8. Here, again, Plaintiff raises equal protection and due process claims. Since Plaintiff attempts to relitigate the same constitutional claims that were rejected by the Texas Court of Appeals, the Court determines that Plaintiff's constitutional claims against Texas OAG[6] are barred by the *Rooker-Feldman* doctrine.

Additionally, Plaintiff contends that the issues here are "not identical" to the issues raised in his state court proceedings. Resp. to Texas OAG 12. Specifically, Plaintiff avers that, because Texas OAG is the adverse party here—and Plaintiff's former spouse was the adverse party before—the cases are different. *Id.* Plaintiff fails to cite any authority suggesting that the *Rooker-Feldman* doctrine should not apply simply because Plaintiff substituted the adverse party. To the

---

[6] Since the Court has already determined that it may not assert personal jurisdiction over Arizona DES, the Court only considers Plaintiff's claims against Texas OAG in this section.

contrary, when a plaintiff attempts to relitigate an adverse state-court decision by styling the complaint as a federal civil rights action against a new defendant, *Rooker-Feldman* bars the restyled suit. *Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) (describing the plaintiff's complaint as "nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack—in the guise of a federal civil rights action—the validity of a state court divorce decree and other related orders"); *Aikins v. Pitre*, No. 3:18-CV-2341-B-BN, 2018 WL 5634214, at *1 (N.D. Tex. Sept. 21, 2018) (dismissing case pursuant to *Rooker-Feldman* after determining that "the amended complaint reflects that the substance of [the plaintiff's] claims has not changed," even though the plaintiff "swapped out the defendants"), *report and recommendation adopted*, No. 3:18-CV-2341-B, 2018 WL 5621490 (N.D. Tex. Oct. 30, 2018).

Further, Plaintiff contends that the state court "did not consider or adjudicate the due process or equal protection implications of first denying the obligor a credit for the value of a child support entitlement, then processing an administrative garnishment of old age retirement benefits against him." Resp. to Texas OAG 12. However, Plaintiff

clearly raised equal protection and due process challenges to Texas's

child support scheme in front of the Texas Court of Appeals.[7]  Now, he

again challenges Texas's statutory scheme on the same constitutional

grounds.  To consider Plaintiff's due process and equal protection

arguments challenging Texas's scheme—even if Plaintiff frames them

in a new way—would be tantamount to appellate review over the state

court's decision.

    In sum, even though Plaintiff attempts to recast his arguments,

the Court concludes that Plaintiff's federal constitutional claims are

barred by *Rooker-Feldman*.  When Plaintiff challenged his child support

obligations in Texas court, Plaintiff asserted that the Texas scheme

violates due process and equal protection.  Here, he raises the same

challenges.  Because the Court concludes that Plaintiff effectively seeks

to appeal the state court's adverse decision, the Court is of the opinion

that Plaintiff's claims against Texas OAG must be dismissed for lack of

subject matter jurisdiction.

---

[7] It appears that Plaintiff believes that the Texas Court of Appeals
failed to fully consider his arguments.  Federal courts cannot consider
an argument raised in front of the state court simply because the state
court's analysis was conclusory.

### D. Whether Plaintiff has Identified Other Grounds for Federal Jurisdiction

Plaintiff argues that, even if the *Rooker-Feldman* doctrine applies

to proceedings in front of the Texas District Court and Court of Appeals,

the doctrine should not preclude the federal court's review of

"administrative decisions made by Defendant [Texas] OAG to garnish

Plaintiff's social security benefits and claim a lien against IRA funds

held in the name of Plaintiff."  Resp. to Texas OAG 9.  As discussed

above, to the extent that Plaintiff challenges the statutory scheme

which provides Texas OAG with the authority to enforce child support

orders on the basis of due process or equal protection, *Rooker-Feldman*

bars Plaintiff's claim.

If Plaintiff attempts to challenge Texas OAG's administrative

decision on other, non-constitutional grounds, Plaintiff has failed to

identify any authority allowing the Court to review state administrative

decisions.  Plaintiff contends that Texas law requires that a collector

may not enforce a debt unless the debt is properly assigned.  Am.

Compl. 28.  Plaintiff characterizes this requirement as "a good common

sense rule firmly embedded in our jurisprudence . . . and in the 'cases

and controversies' clause of Article III as well."  *Id.*  Accordingly,

Plaintiff appears to believe that the Court has some general authority to review state actions.

However, federal courts are courts of "courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute," *Kokkonen*, 511 U.S. at 377. Thus, Article III does not give the federal courts general jurisdiction over state-law cases and controversies. In fact, the "cases and controversies" clause limits, rather than expands, the jurisdiction of federal courts. *See Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) ("The Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" (citing U.S. CONST., art. III § 2)). Thus, a federal court cannot evaluate whether a Texas agency's action comports with Texas law. If Plaintiff believes that the agency's enforcement actions deviate from Texas's statutory or regulatory scheme, then this state-law issue is properly raised in state court.

In conclusion, Plaintiff does not identify any claims that would tend to establish federal jurisdiction that he did not previously raise in state court, and federal courts do not have the general authority to review state administrative decisions. Thus, the Court is of the opinion that Plaintiff has failed to demonstrate that any grounds exist which

would allow the Court to review Texas OAG's administrative decisions.

### E. Domestic Relations Exception to Diversity Jurisdiction

In addition, Plaintiff "requests that the court assume supplemental jurisdiction to hear and determine his motion to modify under Arizona child support short form guidelines . . . based on an unanswered submittal made to the Superior Court of Arizona." Am. Compl. 4. Having determined that the Court must dismiss Plaintiff's claims against Arizona DES and Texas OAG, no viable federal claim remains. Accordingly, Plaintiff has no federal case to which any modification of his child support order could attach based on supplemental jurisdiction. However, in the interest of thoroughness, the Court considers whether it could exercise jurisdiction and modify Plaintiff's child custody order. Ultimately, the Court determines that, even if Plaintiff's federal claims were proper, the Court could not exercise jurisdiction over the child support order because federal courts may not entertain cases regarding domestic relations.

The United States Supreme Court has recognized that a "domestic relations exception" to diversity jurisdiction exists. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("[T]he domestic relations exception,

as articulated by this Court since *Barber*, divests the federal courts of power to issue divorce, alimony, and child custody decrees.").  This domestic relations exception reflects a long-standing principle of federal jurisdiction that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."  *In re Burrus*, 136 U.S. 586, 593–94 (1890).

Plaintiff avers that, because the Supreme Court lists "divorce, alimony, and child custody decrees" as within the domestic relations exception but does not expressly include "child support" orders, the domestic relations exception does not apply here.  Surreply to Arizona DES 6.  The Court disagrees.  Although in dicta, the Fifth Circuit acknowledged that suits to "obtain child support" fall within the domestic relations exception.  *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978).  Moreover, courts have consistently determined that child support orders squarely fall within the *Ankenbrandt* domestic relations exception.  *See Lucado v. Coherd*, 581 F. App'x 809, 810 (11th Cir. 2014) (stating that the domestic relations "exemption applies to cases involving divorce and alimony, child custody, visitations rights,

establishment of paternity, *child support*, and enforcement of separation or divorce decrees still subject to state court modification.") (emphasis added) (internal citation and quotation marks omitted); *Wyttenbach v. Parrish*, 496 F. App'x 796, 797 (10th Cir. 2012) (holding that the district court was "undoubtedly right" to decline to hear a case pursuant to the domestic relations exception where the plaintiff sought "a refund of his child support and other payments"); *Griessel v. Mobley*, 554 F. Supp. 2d 597, 601 (M.D.N.C. 2008) ("By inference, the Supreme Court also brought within the domestic relations exception the related matter of child support by speaking approvingly of lower court decisions which so hold.") (citing *Ankenbrandt*, 504 U.S. at 704 n.6).  Accordingly, the Court believes that it may not entertain a claim seeking to modify a child support order.

To the extent that Plaintiff challenges state courts' calculations or decisions regarding his child support order, the challenges must be raised in state court proceedings.  Plaintiff believes that these issues "cannot be resolved by litigating separately with either Texas OAG or Arizona DES."  Am. Compl. 3.  Accordingly, Plaintiff seeks an order requiring that Texas OAG and Arizona DES work together to determine

which state should have jurisdiction over this case, "report their . . . agreed findings to the Court," and reconsider Plaintiff's child support obligations. *Id.* at 35. However, Plaintiff fails to cite any authority that might provide a federal court the authority to oversee state court findings regarding an obligor's child support obligations. Based on the domestic relations exception, the Court believes it lacks such authority.

In sum, the Court determines that it lacks the authority to modify child support orders, to review calculations regarding Plaintiff's child support payments, or to require cooperation between the state agencies responsible for reviewing Plaintiff's child support obligations. The doors of federal court cannot swing open to allow federal review of domestic relations decisions simply because Plaintiff believes that his suit cannot be effectively resolved in the state court systems.

## IV. CONCLUSION

In conclusion, the Eleventh Amendment bars suit against Arizona DES and Texas OAG. Although litigants may bring constitutional claims against named officials who enforce allegedly unconstitutional statutes, the Court is of the opinion that Plaintiff should not be provided leave to amend his complaint because doing so would be futile.

Specifically, the Court may not assert personal jurisdiction over a sister-state's officer acting in her official capacity. Therefore, allowing Plaintiff to amend his complaint so that it may be brought against an Arizona official would be futile. Moreover, Plaintiff's claims against Texas OAG are barred by the *Rooker-Feldman* doctrine because this case raises issues that Plaintiff already litigated in state courts. Further, Plaintiff has not identified any basis for jurisdiction that would allow the Court to review state administrative decisions. Finally, the domestic relations exception precludes the Court from assuming jurisdiction over Plaintiff's child support order. Thus, the Court concludes that Defendants Arizona DES and Texas OAG's Motions should be granted and Plaintiff's claims should be dismissed.

Accordingly, **IT IS ORDERED** that Arizona Department of Economic Security's "Motion to Dismiss First Amended Complaint" (ECF No. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Office of the Attorney General of Texas's "Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (ECF No. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Larry Neal

Sullivan's claims against Defendants Arizona Department of Economic

Security and Office of the Attorney General of Texas are **DISMISSED**.

**IT IS FURTHER ORDERED** that all settings in this matter are

**VACATED** and that all pending motions in this cause, if any, are

**DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that the Clerk shall **CLOSE** this

case.

**SIGNED** this **15th day** of **April, 2019.**

_____

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**